GULF MARITIME WAREHOUSE
COMPANY, Appellant,

v.

Jarrett TOWERS, Sr., et al., Appellees.

No. 09–92–055 CV.

Court of Appeals of Texas,
Beaumont.

July 1, 1993.

Rehearing Denied July 22, 1993.

Kurt Groten, Phillips & Akers, Andrew T. McKinney IV, Phillips & Akers, Houston, for appellant.

Richard L. Scheer, Strong, Pipkin, Nelson & Bissell, Beaumont, Sid S. Stover, Seale, Stover, Coffield & Bisbey, Jasper, Michael R. McGown, Weller, Wheelus & Green, Beaumont, Carmody Baker, Fulbright & Jaworski, Richard A. Sheehy, McFall & Sartwelle, Houston, for appellees.

Louis M. Scofield, Jr., Mehaffy & Weber, Beaumont, intervenor.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This appeal comes from the 172nd Judicial District Court of Jefferson County, Texas, Hon. Donald J. Floyd, presiding. A jury, by ten-two verdict, found appellant Gulf Maritime one hundred percent (100%) liable for injuries suffered by Jarrett Towers, Sr. ("Towers"). Towers recovered a judgment in his favor for $2,212,929.58. Mary Towers, wife of Towers, recovered a judgment in her favor for $319,000 and Jarrett Towers, Jr., son, recovered a judgment in his favor for $120,833.33. Appellant, Gulf Maritime, makes its appeal. Other appellees appearing herein are Quantum Chemical, a defendant below, and Texas Employers Insurance Association, an intervenor below.

We reverse and remand this case to the trial court from whence it came for reason that the Hon. Donald J. Floyd, presiding, was disqualified by law to sit as a judge in this case. In view of our determination that Judge Floyd was disqualified, we make no address to the merits and substantive issues in this appeal. Our address shall be directed solely to the legal concerns requiring disqualification of the trial judge raised in point of error one.

Factually, Jarrett Towers, Sr., at the time of the accident resulting in his injuries, was working for Coastal Technicians, Inc. Coastal was in the business of contracting hired labor to various other companies. Towers was injured while working at the premises of appellant, Gulf Maritime Warehouse Company.

Appellant, Gulf, had facilities for handling, storing, packaging, and shipping various products. Appellee, Quantum Chemical Corporation, U.S.I. Division, produced plastic pellets and shipped them to Gulf Maritime in railroad hopper cars. Appellant, Gulf, using some of its own employees and some of the employees obtained from Coastal, unloaded these plastic pellets from the hopper cars. On September 30, 1988, Towers climbed a ladder to the top of a hopper car to open some hatches and apparently lost his balance and fell off onto the concrete below, sustaining serious injuries.

Appellee Towers filed his original lawsuit against appellant on October 19, 1989. On January 25, 1990, the Towers family, as plaintiffs, joined appellee Quantum as a defendant in the suit. On October 28, 1991, a jury was selected to hear this case and during the third day of trial appellant, Gulf, became aware that Judge Donald Floyd's wife was an employee of defendant, Quantum Chemical Corporation. Upon learning of this fact, appellant Gulf requested a hearing on the matter. Appellant, Gulf, learned that Judge Floyd's wife had been employed at Quantum Chemical for some fourteen years in a management position as Employee Relations Supervisor.

Judge Floyd and his wife had been married for fifteen years. Resulting from her employment with Quantum Chemical Corporation, Mrs. Floyd receives a salary, owns stock in Quantum through its pension plan and its employee stock ownership plan, and/or a 401(k) plan.

■ When Gulf became aware of Judge Floyd's wife's employment with Quantum, Gulf asked the trial judge to disqualify himself pursuant to Tex.R.Civ.P. 18b. Without detail, suffice it to say that Gulf and Quantum were adverse to each other on a number of issues in the trial. When Gulf first raised the question of disqualification or recusal, Judge Floyd responded that he would recuse himself if Gulf so moved. Judge Floyd, having made this offer, changed his mind after lunch break and refused to step down. Judge Floyd stated, "I think that I can be fair and I won't recuse myself." From this statement we presume that the foremost consideration given by Judge Floyd was as to his ability to be fair. Fairness may be an issue on recusal but is of no consideration on the question of disqualification.

■ A judge's refusal to recuse is viewed on appeal by an abuse of discretion standard. *J–IV Investments v. David Lynn Machine, Inc.,* 784 S.W.2d 106, 107 (Tex.App.—Dallas 1990, no writ); *Petitt v. Laware,* 715 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); Tex.R.Civ.P. 18a(f).

Regarding disqualification of a judge, we have two bases of consideration. First, is Tex. Const. art. V, § 11 which states as follows:

Sec. 11. No judge shall sit in any case *wherein he may be interested,* or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case ... (emphasis ours)

The second basis is Tex.R.Civ.P. 18b(1) which reads as follows:

**(1) Disqualification.** Judges shall disqualify themselves in all proceedings in which:

(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter; or

(b) they know that, individually or as a fiduciary, they have an interest in the subject matter in controversy; or

(c) either of the parties may be related to them by affinity or consanguinity within the third degree.

■ There is a distinction between Rule 18b(1)(b) and Rule 18b(2)(e). Rule 18b(2) deals with recusal as opposed to disqualification. Under the disqualification portion of Rule 18b the reference is to "an interest". Under the recusal section of Rule 18b(2)(e) the interest is described as a "financial interest". Is an "interest" under the disqualification portion of the rule different from a "financial interest" under the recusal section of the rule? We think not, for, the interest of a judge, in order that he may be disqualified, must, in general, be a direct pecuniary or property interest in the subject matter of litigation. *City of Pasadena v. State,* 428 S.W.2d 388 (Tex.Civ. App.—Houston [1st Dist.] 1967), *overruled on other grounds,* (concurring opinion on rehearing) 442 S.W.2d 325 (Tex.1969); *see also, Narro Warehouse, Inc. v. Kelly,* 530 S.W.2d 146, 149 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (interest must be direct, real and certain, immediately resulting from the litigation in question); *Moody v. City of University Park,* 278 S.W.2d 912, 919 (Tex.Civ.App.—Dallas 1955, writ ref's n.r.e.) (judge must stand to gain or lose a measurable benefit as direct consequence of suit); *Wagner v. State,* 217 S.W.2d 463, 464 (Tex.Civ.App.—San Antonio 1948, writ ref'd n.r.e.) (interest necessary to disqualify must be direct or pecuniary interest in subject matter of litigation). Once a pecuniary interest is shown to exist, the judge is disqualified no matter how slight the interest. *See Cameron v. Greenhill,* 582 S.W.2d 775, 776 (Tex.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979); *Lindsley v. Lindsley,* 152 S.W.2d 415, 433 (Tex.Civ.App.—Dallas 1941) (opinion on rehearing), *rev'd on other*

*grounds,* 139 Tex. 512, 163 S.W.2d 633 (1942).

█ Where doubt exist as to a judge's interest that doubt should be resolved in favor of disqualification. *Lindsley,* 152 S.W.2d at 432. The Dallas Court of Civil Appeals provided further that the constitutional language "may be interested" implies that if there is doubt, the judge should be disqualified. *Id.*

Having a pecuniary or financial interest is certainly of foremost consideration. There are other concerns however which have been addressed by Justice Spear's concurring comments in *Sun Exploration and Production Co. v. Jackson,* 783 S.W.2d 202, 206 (Tex.1989): [1]

Public policy demands that the judge who sits in a case act with absolute impartiality. *Pendergrass v. Beale,* 59 Tex. 446, 447 (1883). Beyond the demand that a judge *be* impartial, however, is the requirement that a judge *appear to be* impartial so that no doubts or suspicions exist as to the fairness or integrity of the court. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986); *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). The judiciary must strive not only to give all parties a fair trial but also to maintain a high level of public trust and confidence. *Indemnity Ins. Co. v. McGee,* 163 Tex. 412, 356 S.W.2d 666, 668 (Tex.1962). The legitimacy of the judicial process is based on the public's respect and on its confidence that the system settles controversies impartially and fairly. Judicial decisions rendered under circumstances that suggest bias, prejudice, or favoritism undermine the integrity of the courts, breed skepticism and mistrust, and thwart the very principles on which the judicial system is based. The judiciary must be extremely diligent in avoiding any appearance of impropriety and must hold itself to exacting standards lest it lose its legitimacy and suffer a loss of public confidence. Although the court reverses the trial court's judgment, it remains si-

lent on the recusal question and thus fails to cure the perception of unfairness.

Although these stated concerns deal primarily with questions of recusal, we suggest that the concepts should be held foremost in the minds of all judges or justices in weighing our own participation and involvement in cases.

█ Appellee, Texas Employers Insurance Association, contends that appellant was unable to bring forth any evidence to show that Judge Floyd personally owned any financial interest in Quantum and that appellant's "community property" issue is not properly before the court. We could not disagree more for the evidence is contained in Quantum's own sworn motion to have Judge Floyd disqualify or recuse. We do not think that it is incumbent upon one challenging the disqualifications of a judge to prove to a nickel the effect that a judgment could possibly have upon a judge's interest. The judgment rendered in this case exceeded $2,000,000. In order to disqualify Judge Floyd, must Gulf now show the precise interest which would have been affected had this judgment been entered against defendant Quantum?

█ It is apparent that Judge Floyd failed to distinguish the difference between disqualification and recusal as did certain trial counsel. Perhaps the most exhaustive article regarding the sometimes fine-line distinctions is William W. Kilgarlin and Jennifer Bruch, *Disqualification and Recusal of Judges,* 17 ST.MARY'S L.J. 599 (1986). The article provides that "the terms 'disqualification' and 'recusal' are often used interchangeably ... such use is a grievous error. If a judge is disqualified under the Constitution, he is absolutely without jurisdiction in the case, and any judgment rendered by him is void, without effect, and subject to collateral attack." *Id.* at 601–602.

A most distinguishing factor between disqualification and recusal is that recusal may be waived if not raised by proper motion. *See Humble Exploration Co. v.*

---

1. The majority opinion did not address the issue.

*Browning,* 677 S.W.2d 111, 114 (Tex. App.—Dallas 1984, writ ref'd n.r.e.); *Gaines v. Gaines,* 677 S.W.2d 727, 730 (Tex.Civ.App.—Corpus Christi 1984, no writ).

■ Disqualification, however, is a different creature in that it survives silence. Although Rules 18a and 18b set forth certain distinguishing characteristics between disqualification and recusal, these rules are lacking of fine-line clarity, particularly regarding effect. While recusal requires a certain degree of procedural "tip-toeing," not so with disqualification. Disqualification may be raised at any time. *See Buckholts Indep. School Dist. v. Glaser,* 632 S.W.2d 146, 148 (Tex.1982). Furthermore, disqualification may even be raised for the first time in a collateral attack on the judgment. *See Lee v. State,* 555 S.W.2d 121, 124 (Tex.Crim.App.1977); *Ex parte Washington,* 442 S.W.2d 391, 393 (Tex.Crim.App. 1969). Either a trial court or appellate court may raise the question of disqualification on its own motion. *See Lee,* 555 S.W.2d at 122; *City of Houston v. Houston Lighting & Power Co.,* 530 S.W.2d 866, 868 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.); *Pinchback v. Pinchback,* 341 S.W.2d 549, 553 (Tex.Civ. App.—Fort Worth 1960, writ ref'd n.r.e.).

When the question of disqualification was raised by both appellee, Quantum, and appellant, Gulf, we believe that it became incumbent upon Judge Floyd to give strict heed to the provisions of Rule 18a(c) and (d) by referring this matter to the administrative judge for further proceedings.

■ Where the question of disqualification is unclear on appeal, there is authority for appellate courts to decline the appeal and send the matter back to the trial court for further evidentiary hearing on the issue. *See Gamez v. State,* 644 S.W.2d 879, 880 (Tex.App.—San Antonio 1982, pet. ref'd). We find no such need in this case for we believe that appellee, Quantum, made clear the disqualification of Judge Floyd in its sworn affidavit.

We find most interesting that when the issue of Judge Floyd's possible disqualification arose, Quantum filed its own motion to have Judge Floyd disqualified or recused. This motion was denied by written order bearing no date. Quantum, on appeal, has taken the lead in attempting to justify Judge Floyd's continuing in the trial of this case. We believe it worthwhile to set forth Quantum's Motion to Disqualify/Recuse in toto:

NO. E–134, 134

| | | |
|---|---|---|
| JARRETT TOWERS, SR., ET UX | § | IN THE DISTRICT COURT OF |
| VS. | § § | JEFFERSON COUNTY, TEXAS |
| GULF MARITIME WAREHOUSE CORP., ET AL | § § § | 172ND JUDICIAL DISTRICT |

### MOTION TO DISQUALIFY AND MOTION TO RECUSE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW DEFENDANT, QUANTUM CHEMICAL CORPORATION, USI DIVISION, and makes and files this its Motion to Disqualify and Motion to Recuse and in support whereof would respectfully show unto the Court as follows:

I.

It has come to the attention of the parties to this case after the jury was sworn that Judge Floyd, the judge hearing this matter, himself or through his wife or both have a financial interest in Quantum Chemical Corporation, USI Division. Specifically, it has come to light that the Judge's spouse is in management with Quantum and through pension plans, employee stock ownership plans and 401(K) plans has acquired a direct ownership interest in Quantum Chemical Corporation.

II.

Because of the information set out in paragraph I it is the opinion of this Defendant that Judge Floyd is disqualified or alternatively must recuse himself pursuant to Rule 18b and particularly Rule 18b(2)(e) and Rule 18b(4)(d) of the Texas Rules of Civil Procedure.

III.

To date neither the Judge nor his spouse has divested himself or herself of the interest which is asserted to cause recusal.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Court disqualify Judge Floyd for the grounds stated or alternatively that Judge Floyd recuse himself immediately from the trial of this case; and for such other and further relief, both general and special, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

STRONG, PIPKIN, NELSON & BISSELL
14th Floor, San Jacinto Building
595 Orleans
Beaumont, Texas 77701–3255
(409) 835–4581
Fax (409) 835–0914
/s/ David A. Oliver
David A. Oliver
Texas Bar No. 15257510

ATTORNEYS FOR DEFENDANT,
QUANTUM CHEMICAL CORPORATION

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing is being furnished to Sid S. Stover, Esq., counsel for Plaintiffs, and to all other counsel of record by hand delivery, on this the 4th day of November, 1991.
/s/ David A. Oliver
David A. Oliver

THE STATE OF TEXAS §

COUNTY OF JEFFERSON §

BEFORE ME, the undersigned authority, on this day personally appeared David A. Oliver, who, being by me first duly sworn, deposes and says:

That he is over 21 years of age, of sound mind and capable of making this Affidavit, and is personally acquainted with the facts herein stated, and further is one of the attorneys for Defendant in the above-entitled and numbered cause; that he has read the foregoing Motion to Disqualify and Motion to Recuse and that the information pertaining to "financial interest" contained in Paragraphs I, II and III, based upon information and belief, are true and correct.
/s/ David A. Oliver
David A. Oliver

SWORN TO and SUBSCRIBED BEFORE ME on this the 4th day of November, 1991.

[seal]

/s/ Linda A. Sachitano
NOTARY PUBLIC, STATE OF TEXAS

---

Quantum now positions on appeal that there is "no evidence" supportive of appellant's motion to disqualify/recuse; that appellant did not comply with Rule 18a(a) in filing its motion within 10 days of trial date, which constitutes a "waiver" of appellant's rights to seek disqualification/recusal; that appellant failed to comply with Rule 18a in not giving three (3) day notice of presentation of its motion; that appellant's affidavit in support of its motion merely stated legal conclusions unsupported by fact; that appellant's motions did not state with particularity the basis for disqualification/recusal; that appellant was late in claiming that Judge Floyd owned a "community interest" in Mrs. Floyd's stock; and that during trial Judge Floyd's rulings were not biased or favorable to Quantum.

■ We believe the best evidence in support of Judge Floyd's disqualification came from Mrs. Floyd's employer, defendant Quantum. Quantum, under oath states that Judge Floyd has a "direct ownership interest in Quantum Chemical Corporation." Further, under oath Quantum states that, "To date *neither* the Judge nor his spouse has divested himself or herself of the interest which is asserted to cause recusal." (emphasis ours)

Who better knows or should know the ownership interest of a corporation than the corporation itself? Who would better know of a conflict of interest or a potential conflict of interest than the parties sharing that interest? Who was in the better position, long prior to trial, to be aware that the interest involved might be conflictive? Quantum, now on appeal, says that Gulf should have discovered this interest through the discovery process. We rather think that Quantum more justly bore that burden, i.e., to reveal to Gulf and all parties that Judge Floyd's wife occupied a managerial position in Quantum and owned an interest in Quantum. We further think that a like burden was imposed upon Judge Floyd to raise the issue immediately upon learning that Quantum was involved in the pending litigation. Appellant, Gulf, says "[o]nly now does Quantum Chemical, after having the benefit of seeing the jury verdict, seek to withdraw its prior support for the disqualification of Judge Floyd and call into doubt the information on which Gulf Maritime relies." Quantum, in its brief and reply brief has chosen to stand mute on this issue. We find Quantum's silence revealing. We best describe Quantum's now technical arguments against disqualification as neo-enlightenment acquired through favorable verdict. Appellee Texas Employers Insurance Association and appellees Towers basically mimic Quantum's address to the disqualification/recusal issue.

Appellees make lengthy and technical argument as to why it was acceptable conduct for Judge Floyd to sit in judgment of this case. For example, appellee Quantum positions that Rule 18a mandates that a motion to disqualify/recuse be filed 10 days before trial. It is elementary that appellant Gulf did not meet the 10 day requirement in that Gulf did not learn of the potential disqualification issue until three days into trial, thus making it impossible for Gulf to comply with such requirement. Appellee, Quantum, positions that "[s]ince the 10–day requirement is mandatory, and since Gulf Maritime failed to file its motion 'at least 10 days before the date set for trial,' that factor alone required the denial of the motion to disqualify or recuse." *Citing Watkins v. Pearson*, 795 S.W.2d 257, 259 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Further, regarding appellees' contention that appellant failed to meet the ten day requirement, we agree with Justice Spears that, "The rule, however, does not contemplate the situation in which a party does not know of the disability of the judge to sit in the case until after trial has been completed." *Sun Exploration*, 783 S.W.2d at 206.

■ We are more impressed with appellant's plea of "unavoidable ignorance". How could appellant, Gulf, have complied with the 10–day requirement of Rule 18a? Appellee, Quantum, says that such ignorance was not unavoidable. Quantum suggests that "Gulf Maritime could have directed discovery to the parties (not to the judge, as Gulf Maritime suggests) to determine whether the alleged interest existed." We find this argument to be completely without merit or substance. Reason is over extended when we require parties to lawsuits to seek a back door, covert, indirect method of determining whether a trial judge is disqualified. That burden rests more fairly upon those with knowledge of potential impediment. Again, however, our case involves disqualification. We hold that the ten (10) day requisite under Tex. R.Civ.P. 18a does not apply to disqualification.

We, as members of the judiciary, are charged with a duty to first know what our own interests are, and, second, to avoid the intermingling of those interests in litigation pending before us. It would be extremely difficult for judges to give a complete and thorough monitoring of cases filed in our respective courts to determine some possible conflict or basis for recusal or disqualification. It is not burdensome, however, when we become directly confronted with

possible conflict as the case proceeds toward its final outcome. We previously stated that the original lawsuit in this matter was filed October 19, 1989. Quantum was joined as a defendant in this lawsuit on January 25, 1990.

Since we determine and hold Judge Floyd to be disqualified under Article V, § 11 and Rule 18b(1)(b), a discussion of whether recusal was also required is not necessary at this time.

We reverse the judgment entered by Judge Floyd and we remand this case back to the trial court. In so doing we assume that local Presiding Judge Michael Bradford shall request the assignment of a judge to try this matter.

REVERSED AND REMANDED.

BURGESS, Justice, concurring.

I agree with Chief Justice Walker's opinion in all respects and write only to point out the procedural predicament of the Towers family. While they neither moved for recusal nor disqualification, they did urge the judge to continue the trial based upon expense factors. However, once Judge Floyd refused to recuse or deem himself disqualified, the Towers had no choice but to litigate their claims.[1] They carried their burden of persuasion and received significant awards for their damages, only to now lose them. This result, while well founded and mandated in law, may understandably cause the Towers to lose confidence in the fairness and legitimacy of the judicial system. In consideration of the Towers' position, I would tax costs solely against Quantum. Tex.R.App.P. 89.

---

1. Unless the supreme court recognizes a waiver to disqualification, a rule allowing an interlocutory appeal is the only remedy. Whether such a rule is workable in a mid-trial situation is questionable.